UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:19-CV-00019-HBB

MOLLY HEATH                                                                                                PLAINTIFF

VS.

ANDREW SAUL, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION[1]                                                    DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Molly Heath ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 14) and Defendant (DN 26) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 12). By Order entered May

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

14, 2019 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.   No such request was filed.

FINDINGS OF FACT

On February 10, 2016, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 16, 203, 206, 208).   Plaintiff alleged that she became disabled on January 21, 2016 because of chronic pain, spinal stenosis, fibromyalgia, and degenerative disc disease (Tr. 16, 236).   Administrative Law Judge Jennifer B. Thomas ("ALJ") conducted a video hearing from Paducah, Kentucky on January 23, 2018 (Tr. 16, 33-36).   Plaintiff and her attorney, Sara J. Martin, participated in the hearing from Owensboro, Kentucky (Id.).   Also present and testifying was Kenneth Boaz, an impartial vocational expert (Id.).

In a decision dated April 19, 2018 the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 16-26).   At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 21, 2016 the alleged onset date (Tr. 18).   At the second step, the ALJ determined that Plaintiff has the following severe impairments: obesity, spine disorder, fibromyalgia, history of pulmonary embolism, headaches/migraines, and depression/mood disorder (Id.).   Additionally, the ALJ found that although Plaintiff's sleep apnea is a medically determinable impairment, it is not severe within the meaning of the regulations (Tr. 19).   The ALJ also found that Plaintiff's cervical spondylosis is a non-medically determinable impairment due to the lack of imaging confirming the diagnosis (Id.).   At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

2

At the fourth step, the ALJ found Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she is limited to: only sitting 30 minutes at a time and standing or walking 30 minutes at a time; occasional climbing ramps and/or stairs; never climbing ladders, ropes, and/or scaffolds; occasional stooping, kneeling, crouching, and/or crawling; frequent reaching overhead and all around with upper extremities; frequent handling or fingering with upper extremity; occasional exposure to vibrations; no exposure to moving mechanical parts and unprotected heights; and no production quota (Tr. 21-22). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 25).

The ALJ proceeded to the fifth step where she considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 25-26). The ALJ found that Plaintiff can perform a significant number of jobs that exist in the national economy (Tr. 26). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from January 21, 2016, through the date of the decision, April 19, 2018 (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 201-02). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d

3

680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

4

expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

Finding No. 10

1. Arguments of the Parties

Plaintiff argues that substantial evidence did not support the ALJ accepting the vocational expert's testimony and supporting evidence as reliable (DN 14, DN 14-1 PageID # 1006-08).

5

Plaintiff explains that the vocational expert's testimony cannot constitute substantial evidence because he relied on obsolete job descriptions from the Dictionary of Occupational Titles (DOT) (Id.). Plaintiff asserts that if the vocational expert had supplemented his testimony with information from a more up-to-date and reliable resource like O-NET, the ALJ would have been aware that only one of the three jobs identified still exists and the SVP range is now much higher than what it is in the DOT (Id.). Additionally, Plaintiff argues the jobs identified by the vocational expert are not available in significant numbers in the regional economy (Id.).

Defendant argues the ALJ reasonably relied on the vocational expert's testimony that Plaintiff could perform jobs that exist in significant numbers in the national economy (DN 26 PageID # 1055-62). Defendant asserts that Plaintiff should have questioned the vocational expert about O-NET or job obsolescence but failed to do so (Id.). For this reason, the vocational expert's uncontradicted testimony constituted substantial evidence to support the ALJ's finding (Id.). While it is unclear where Plaintiff got her job numbers for the regional economy, Defendant points out the issue is whether there is a significant number of jobs in the national economy that Plaintiff can perform (Id. PageID # 1055 n. 4). According to Defendant, the vocational expert's testimony indicates when all three jobs are combined there are a total of 125,000 jobs available in the national economy (Id.). That figure is more than adequate to show that there are a significant number of jobs available in the national economy that Plaintiff can perform (Id.).

2. Discussion

The Sixth Circuit, albeit in an unpublished opinion, previously cautioned that "*common sense dictates*" when job descriptions in the DOT "appear obsolete, a more recent source of information should be consulted." Cunningham v. Astrue, 360 F. App'x 606, 615 (6th Cir. 2010)

(emphasis added). Several district courts in the Sixth Circuit followed Cunningham and remanded matters to the Commissioner when the vocational expert's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence supported the ALJ's determination at the fifth step. *See e.g.* Wright v. Berryhill, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); Westmoreland v. Berryhill, No. 3:17-cv-00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); Rollston v. Comm'r of Soc. Sec., No. 1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016). Other district courts within the Sixth Circuit have criticized Cunningham's reasoning and declined to follow its holding. *See e.g.* Kidd v. Berryhill, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7-10 (E.D. Ky. June 19, 2018); Montano v. Comm'r of Soc. Sec., No. 1:13-cv-70, 2014 WL 585363, at *15 (S.D. Ohio Feb. 14, 2014); Belew v. Astrue, No. 2:11-107-DCR, 2012 WL 3027114, at *9-10 (E.D. Ky. July 24, 2012).

In a recently issued unpublished order, the Sixth Circuit attempted to resolve the apparent confusion among some of the district courts. O'Neal v. Comm'r of Soc. Sec., No. 18-2372, 2020 WL 97414, at *3-4 (6th Cir. Jan. 7, 2020). Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that the claimant was able to perform work that existed in significant numbers in the national economy. O'Neal v. Comm'r of Soc. Sec., No. 18-2372, 2020 WL 97414, at *3-4 (6th Cir. Jan. 7, 2020).

Applying the holding in O'Neal to the circumstances before the Court, during the administrative hearing the vocational expert responded to the ALJ's hypothetical question by

testifying that the individual could perform occupations such as ticket taker DOT # 344.667-010, and there are 30,000 jobs in the national economy; monogram machine tender DOT # 583.685-046, and there are 80,000 jobs in the national economy; and garment sorter DOT # 222.687-014 and there are 15,000 jobs in the national economy (Tr. 60-61). Although Plaintiff had the opportunity, she did not cross-examine the vocational expert about the DOT descriptions for these three jobs (Tr. 62). Thus, considering the holding in O'Neal, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Plaintiff is able to perform work that exists in significant numbers in the national economy (Tr. 26).

Next, as mentioned above, Plaintiff argues the three jobs identified by the vocational expert do not exist in significant numbers in the regional economy. Plaintiff asserts there are only 2500 of these jobs in the regional economy. The Court notes that the vocational expert rendered an opinion about the number of these jobs in the national economy, not the regional economy (Tr. 60-62). Thus, Plaintiff's argument is based on evidence from outside the administrative record. More importantly, the issue is whether there exists a significant number of jobs in the national economy that Plaintiff can perform, given her age, education, work experience, and RFC. *See* 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). The vocational expert's testimony indicates there are 125,000 jobs available in the national economy (Tr. 61). This amount is more than adequate to show there is a significant number of jobs available in the national economy that Plaintiff can perform. *See* Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016) (6,000 jobs in the national economy is a significant number of available jobs) (citations omitted); Templeton v. Comm'r of Soc. Sec., 215 F. App'x 458, 462-63 (6th Cir. 2007) (30,000 jobs in the national economy qualifies as significant); Bradley v. Comm'r of Soc. Sec., 40 F. App'x 972, 972 (6th Cir.

2002) (170,000 jobs in the national economy is a significant number). In sum, the vocational expert's testimony provided substantial evidence to support the ALJ's finding that there exists a significant number of jobs in the national economy that Plaintiff can perform, given her age, education, work experience, and RFC.

Finding No. 5

1. Arguments of the Parties

Plaintiff raises three challenges to the RFC set forth in Finding No. 5. First, Plaintiff asserts that the ALJ's assignment of little weight to the opinions of her treating neurologist, Dr. Mayron, and primary care providers, Dr. Bradley and Bridget Johnson APRN, is not supported by substantial evidence in the record and does not comport with applicable law (DN 14; DN 14-1 PageID # 1008-09, citing Tr. 24, 327-29, 938-42).[2] Additionally, Plaintiff contends the ALJ's assignment of great weight to the opinions of the non-examining state agency physicians is unacceptable because the three treating providers agreed to her limitations (Id. Tr. 23-24).

Next, Plaintiff challenges the RFC in Finding No. 5 by asserting it is not supported by substantial evidence in the record (DN 14; DN 14-1 PageID # 1009-12). Plaintiff cites her own testimony, third party function reports, medical records, and her history of pulmonary embolism, pain, fatigue, mental health issues, and migraine headaches (Id.). Plaintiff asserts that her pain and limitations persisted despite treating with a pulmonologist (Dr. Muzoora), rheumatologists

---

2 Plaintiff indicates that Dr. Bradley and Ms. Johnson opined she would need frequent breaks on an as-needed basis in a workday to lie down and would have to change positions frequently so no standing greater than 30 minutes and she would need to be able to get up and stretch (DN 14; DN 14-1 PageID # 1008-, citing Tr. 327-29, 938-42). Plaintiff asserts that her treating neurologist, Dr. Mayron, provided a thorough opinion offering even more insight into her conditions and limitations (DN 14-1 PageID # 1008-09, citing Tr. 938-42).

9

(Drs. Bell & Brey), a spine specialist (Dr. Yang), a pain manager (Dr. Rashada), and a neurologist (Dr. Mayron) (Id. citing Dr. 456, 458, 598, 591, 622, 738, 807, 835-36, 841). Plaintiff also accuses the ALJ of failing to include a mental limitation in the RFC that is consistent with a "paragraph B" criteria finding at the third step (Id. citing Tr. 21, 914-25). Specifically, Plaintiff is referring to the finding that she has a "moderate limitation" in the fourth functional area, adapting or managing oneself (Id.).

Next, Plaintiff challenges the RFC in Finding No. 5 by contending the ALJ erred in failing to accept Plaintiff's testimony as fully credible and in failing to state sufficient reasons for doing so (DN 14; DN 14-1 PageID # 1012-14). Plaintiff contends she gave candid testimony regarding her limitations that was substantiated by the opinions of her treating providers (Id. citing Tr. 39, 40-42, 45, 46, 48-49, 51, 54-55, 56-57,).

Defendant contends the ALJ reasonably weighed the medical opinions in the record and provided good reasons for the weight she accorded each of the medical opinions (DN 26 PageID # 1053-55, citing Tr. 24). Defendant points out the ALJ gave great weight to the opinions of the non-examining state agency physicians because they were consistent with the objective evidence in the record (Id. at 1046-55, citing Tr. 23-24, 781-82, 786-87, 792-93, 797-98, 801, 906-07, 911-912). Defendant argues the ALJ reasonably considered the medical evidence, medical opinions, Plaintiff's testimony, and third-party statements in the record and determined that Plaintiff had the RFC to perform a reduced range of light work (DN 26 PageID # 1046-53, citing Tr. 18-25). Defendant notes that Plaintiff does not indicate how the mental health records she cited support a finding that she would be prevented from working within the confines of the ALJ's RFC determination (Id. citing Tr. 20-21, 920-25). Further, the ALJ considered other medical records

10

concerning Plaintiff's mental impairment and records regarding medication plaintiff took to address both her mental health issue and chronic pain (Id. citing Tr. 20-22, 248-51, 295-99, 453, 459, 496, 498, 589). Defendant contends the ALJ reasonably evaluated Plaintiff's subjective complaints and provided sufficient reasons for finding her subjective reports less than fully credible (Id. citing Tr. 21, 22, 53, 396, 400, 459, 496, 498, 589).

2. Discussion

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c), 416.945(a), 416.946(c). The Administrative Law Judge makes this finding based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c), 416.929, 416.945(a), 416.946(c). Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1527(c), 404.1529(a), 416.927(c), 416.929(a).

The Sixth Circuit has provided the following comprehensive explanation regarding the standards for weighing medical opinions:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the Commissioner does not give a treating-source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, *id.*, as well as the treating source's area of specialty and the degree to which the

11

opinion is consistent with the record as a whole and is supported by relevant evidence, *id.* § 404.1527(c)(2)-(6).

The Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. *Id.* § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004).

On the other hand, opinions from nontreating and nonexamining sources are never assessed for "controlling weight." The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* § 404.1527(c)(6).

Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013).

The ALJ provided an accurate summary of the opinion evidence from the non-examining state agency medical consultants, Drs. Saranga and Reed (Tr. 23-24, 72-74, 85-87, 103-05, 117-19). The ALJ indicated she gave "great weight" to their opinions because they were consistent with the objective findings (Tr. 23). The ALJ explained as follows:

> The record illustrates a normal gait and station (Exhibit 28F). On examination, the claimant's coordination and gait was steady (Exhibit 26F, p. 7). Furthermore, the claimant was able to heel, toe, and random walk without difficulty (*id.*). The claimant's cervical, thoracic, and lumbar spines were nontender and without significant muscle spasms to palpation (*id.*). The claimant also had active range of motion of all spinal segments (*id.*).

12

(Tr. 23-24). The ALJ's assignment of weight based on the factors consistency and supportability is supported by substantial evidence in the record and comports with applicable law (*see* 20 C.F.R. §§ 404.1527(c)(4) and (6), 416.927(c)(4) and (6).

Next, the ALJ noted that Dr. Bradley and nurse practitioner Johnson opined that Plaintiff could not do prolonged walking, standing, or heavy lifting and she would require frequent position changes (Tr. 24, 327-29). The ALJ also observed that Dr. Bradley and nurse practitioner Johnson opined that Plaintiff should stand no longer than 30 minutes, would need the ability to get up and stretch periodically to prevent muscle pain and cramping, and would need the ability to lie down in a quiet dark room on days she has a migraine (Id.). The ALJ indicated she gave some weight to their opinion regarding Plaintiff's need to frequently change positions because the limitation is consistent with Plaintiff's testimony and her chronic complaints of pain (Id.).³ However, the ALJ indicated she gave little weight to Dr. Bradley and nurse practitioner Johnson's opinion that Plaintiff needed to lay down during the workday because objective medical evidence did not support this limitation (Id.). The ALJ explained the treatment notes indicated Plaintiff's migraines were controlled with medication and she only averaged 0-1 per month (Tr. 24, citing 776-802, 902-13).

Although the ALJ's decision is silent on the issue, it is apparent that she did not accord "controlling weight" to the opinions of Dr. Bradley and nurse practitioner Johnson. As discussed above, applicable law required the ALJ to provide "good reasons" for not giving controlling weight to these opinions. *See* Gayheart, 710 F.3d at 376-77 (citing 20 C.F.R. §§ 404.1527(c)(2),

---

3 The RFC included the limitation that Plaintiff can "only sit 30 minutes at a time and stand or walk 30 minutes at a time" (Tr. 21).

13

416.927(c)(2)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'" Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011). Further, the Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted). But such a violation can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.

Id. at 940.

The ALJ expressly considered consistency and supportability in assigning weight to the opinions of Dr. Bradley and nurse practitioner Johnson (*see* Tr. 24 and 20 C.F.R. §§ 404.1527(c)(4) and (6), 416.927(c)(4) and (6)). The ALJ's findings regarding those factors provide "good reasons" for concluding their opinions failed to meet the second prong of the controlling weight test as they are inconsistent with other substantial evidence in the case record. Because the ALJ met the goal of the regulations even though she did not comply with their terms, her violation of the procedural requirement is deemed harmless. Moreover, the ALJ's findings are supported by substantial evidence in the record.

Next, the ALJ observed that Dr. Mayron, a treating physician, opined that Plaintiff should occasionally lift less than 10 pounds, with prolonged sitting the claimant should elevate legs to waist height, she would require frequent breaks of 5-10 minute duration at least 10 times per

14

workday, and she could only sit, stand, or walk for less than 2 hours in an 8-hour workday (Tr. 24, 938-42). The ALJ indicated she gave little weight to Dr. Mayron's opinion because it was too restrictive and was not consistent with nor supported by the doctor's own treatment notes (Id.). The ALJ explained that Dr. Mayron's examination revealed Plaintiff was ambulating without difficulty and her motor strength was full to resistance testing in the upper and lower extremities, and her muscle tone was normal (Tr. 24, 906-07). Additionally, the ALJ noted that Plaintiff's extremities were normal without deformities, clubbing, or edema (Tr. 24, 907).

The ALJ failed to address whether the opinions of Dr. Mayron are entitled to controlling weight. But the ALJ expressly considered consistency and supportability in assigning weight to the opinions of Mayron (*see* Tr. 24 and 20 C.F.R. §§ 404.1527(c)(4) and (6), 416.927(c)(4) and (6)). The ALJ's findings regarding those factors provide "good reasons" for concluding the opinions failed to meet the second prong of the controlling weight test as they are inconsistent with other substantial evidence in the case record. Because the ALJ met the goal of the regulations even though she did not comply with their terms, her violation of the procedural requirement is deemed harmless. Moreover, the ALJ's findings are supported by substantial evidence in the record.

Contrary to Plaintiff's contention, the RFC in Finding No. 5 is supported by substantial evidence in the record. In reaching this conclusion the Court has considered Plaintiff's accusations about the ALJ failing to consider her mental impairment and subjective statements about pain and other symptoms. The Court will begin by addressing Plaintiff's accusation about her mental impairment.

In connection with Finding No. 4, the ALJ concluded that Plaintiff's depression/mood disorder did not meet or medically equal Listing 12.04 in Appendix 1 (Tr. 20-21). In reaching this conclusion, the ALJ considered the four areas of function in the "paragraph B" criteria: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "3. *Concentrate, persist, or maintain pace (paragraph B3)*"; and "*4. Adapt or manage oneself (paragraph B4)*". 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4 (emphasis in original). The ALJ found that Plaintiff had a "mild" limitation in the first three areas of function and a "moderate" limitation in the fourth (Tr. 20-21).[4] A moderate limitation indicates "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F2a-e. The ALJ explained that the "moderate" limitation in the fourth area of function took into consideration Plaintiff's chronic complaints of pain and its effect on her ability to adapt and manage oneself (Id.). The ALJ indicated that her RFC assessment reflected the degree of limitation she found in the "paragraph B" mental functional analysis (Tr. 21). This is confirmed in both the RFC assessment that includes a "no production quota" limitation and the ALJ's evaluation of Plaintiff's chronic complaints of pain on her ability to perform light work (Tr. 21-22, 22-25).

The Court will next address Plaintiff's assertions about failing to accept her testimony as fully credible and in failing to state sufficient reasons for doing so. In assessing Plaintiff's residual functional capacity the ALJ considered her subjective allegations and made findings (Tr.

---

4 The four areas of function in the "paragraph B" criteria are: "1. *Understand, remember, or apply information (paragraph B1)*"; "2. *Interact with others (paragraph B2)*"; "3. *Concentrate, persist, or maintain pace (paragraph B3)*"; and "*4. Adapt or manage oneself (paragraph B4)*". 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00E1-4.

22-25). 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p. Plaintiff's statements regarding pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). In determining whether Plaintiff suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Sec'y of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. The ALJ examined the record and determined there was objective medical evidence of underlying medical conditions. The ALJ next concluded that the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the alleged disabling pain and other symptoms (Tr. 22). Id. Therefore, the ALJ considered other information and factors that are relevant to the degree of pain and other symptoms alleged (Tr. 23-25). 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ considered Plaintiff's level of daily activity (Tr. 19-21, 22-26). 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993); Blacha v. Sec'y of Health & Human Servs., 927 F.2d 228, 231 (6th Cir. 1990). Further, the ALJ considered inconsistencies in the evidence and the extent to which there were conflicts between Plaintiff's statements and the rest of the evidence in the record (Tr. 19-21, 22-26). 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ found from the medical record and Plaintiff's testimony that Plaintiff does not suffer pain and other symptoms to the extent she testified. In the absence of detailed corroborating evidence of Plaintiff's subjective complaints, it became the duty of the ALJ to determine whether she is as limited as alleged. Substantial evidence in the record supports the

ALJ's RFC findings and she provided sufficient reasons for reaching those findings. In sum, Plaintiff's challenges to the RFC in Finding No. 5 are without merit.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

March 12, 2020

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies: Counsel